IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>ALLISON S. EVANS,<br>   *Debtor*. | Case No.: 15-3020-JCO<br>Chapter 7 |
| ALLISON S. EVANS,<br>   *Plaintiff*<br>v.<br>TIMBER RIDGE APARTMENTS,<br>   *Defendant*. | Adv. Proc. No.: 16-32-JCO |

MEMORANDUM OPINION AND FINAL JUDGMENT

This matter is before the Court on Debtor Plaintiff, Allison Evans' Complaint for damages incurred by her due to the Defendant, Timber Ridge Apartments' violation of the discharge injunction. (Doc. 1). Defendant was served with the Complaint on February 9, 2017. (Doc. 27). Defendant failed to answer or otherwise defend against the Complaint within thirty days of service, and at the Plaintiff's request, this Court granted her Motion for Default Judgment (Docs. 52, 57), and set this matter for an evidentiary hearing on damages. The hearing was held on July 31, 2018, and in addition to the testimony provided by Plaintiff, she submitted affidavits in support of the damages she incurred as result of the violations alleged in the Complaint. (Docs. 64, 65). Having considered the record, the evidence presented, and the arguments of Plaintiff, this matter is ripe for determination.

JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has authority to enter a final order.

## FINDINGS OF FACT

The facts set out in this Memorandum Opinion and Order are gleaned from the parties' submissions, their respective responses to those submissions, and the Court's own examination of the evidentiary record. *Davis v. Bank of Am., N.A.*, 2014 WL 5090692, at *1 (N.D. Ala. Oct. 9, 2014). These are the findings necessary for the Court to determine the amount of damages to which Plaintiff is entitled. These "facts" may not be the actual facts that could be established through live testimony at trial. *Id. (citing Cox v. Adm'r U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir.1994)).

On September 16, 2015, Plaintiff Allison Evans (sometimes otherwise referred to herein as "Debtor") filed for chapter 7 relief. (*See* case number 15-3020-JCO, Doc. 1). On January 11, 2016, the Order of Discharge was entered. (15-3020-JCO, Doc. 15). The Discharge Order plainly states,

> "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally discharged debts. Creditors cannot contact the debtors by mail, phone or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

On January15, 2016, the Final Decree was entered, the chapter 7 trustee was discharged, and the bankruptcy case was closed. (15-3020-JCO, Doc. 17). On May 6, 2016, Debtor filed a Motion to Reopen her case to pursue a discharge violation. (15-3020-JCO, Doc. 20). The Motion was granted, (15-3020-JCO, Doc. 29), and Plaintiff filed the present adversary proceeding. (Case number 16-32-JCO[1] Doc. 1).

---

[1] Unless otherwise noted, all document cites refer to documents in the pending adversary proceeding styled *Allison Evans, v. Timber Ridge Apartments,* AP No.: 16-32-JCO.

Timber Ridge Apartments (sometimes otherwise referred to herein as "Defendant") was listed at all times on the creditor matrix, and as holding an unexpired lease on Schedule G. (15-3020-JCO, Doc. 1 at 27, 43). Defendant received notice of Debtor's bankruptcy petition, as well as the Discharge Order. (15-3020-JCO, Doc. 16 at 3).

On or about February 26, 2016, around 1:08 p.m., Plaintiff received a phone call from Defendant regarding back rent that they asserted was not discharged in Plaintiff's bankruptcy case. (Doc. 65). Plaintiff informed Defendant that the debt was discharged and that she did not owe the debt anymore. (*Id.*). On March 10, 2016, around 8:29 a.m., Plaintiff received another phone call from Defendant attempting to collect the back rent they claimed was owed, asserting again that the debt was not discharged in Plaintiff's bankruptcy case. (*Id.*). Plaintiff stated again that the debt was discharged and she no longer owed it. (*Id.*). On March 16, 2016, at 8:09 a.m., Plaintiff received another phone call from Defendant attempting to collect the same debt which they asserted was not discharged in bankruptcy. (*Id.*). Plaintiff informed Defendant yet again that the debt was discharged. (*Id.*). Having received no less than three phone calls to collect a discharged debt, Plaintiff informed her lawyer, Attorney Wesley Blacksher, about the phone calls. Mr. Blacksher contacted the Defendant to inform them that the debt they sought to collect from Plaintiff was discharged in her bankruptcy and to "cease and desist all future contact regarding this debt." (Doc. 64 at 2). After the fourth phone call, Plaintiff's counsel, Mr. Blacksher, contacted Defendant to inform them that this debt was discharged, and to cease all future contact regarding this debt. (Doc. 64 at2 ). Despite Mr. Blacksher's warnings, Defendant called Plaintiff an additional eight (8) times demanding payment for the debt they claimed she owed. Those phone calls occurred on the following dates and times:

March 22, 2016, at 5:46 p.m.
March 24, 2016, at 1:05 p.m.

March 30, 2016, at 9:16 a.m.
April 7, 2016, at 11:11 a.m.
April 7, 2016, at 1:40 p.m.
April 14, 2016, at 9:40 a.m.
April 14, 2016, at 3:01 p.m.
April 21, 2016, at 5:04 p.m.
April 27, 2016, at 10:46 a.m.

(Docs. 64 and 65).

Having received no less than twelve phone calls from Defendant, Plaintiff filed the present adversary proceeding alleging four causes of action: the first count for violation of the automatic stay; the second count for violations of Sections 105 and 506 of Title 11 of the United States Code; count three for violation of discharge order; count four for violations of the Fair Debt Collection Practices Act. After the Complaint was properly served on Defendant, Mr. Blacksher had numerous additional communications with Defendant regarding the post-discharge phone calls, the instant adversary proceeding, and the forthcoming motion for default judgment that would be filed if Defendant failed to file a pleading or responsive motion. Nevertheless, Defendant failed to participate in the case in any meaningful way. Plaintiff filed her Motion for Default Judgment, which was granted, and the matter is now ripe for a determination of damages.

## CONCLUSIONS OF LAW

Having considered the testimony provided by the Debtor at the July 31, 2018 hearing on damages, and the affidavits submitted in support thereof, this Court finds in favor of Plaintiff for the following reasons.

### Count One: Violation of the Automatic Stay

Section 362(a) of the Bankruptcy Code operates as a stay against the commencement or continuation of a proceeding against a debtor that could have been commenced before the debtor

filed bankruptcy. 11 U.S.C. § 362(a). Subsection (k) provides for actual and punitive damages, including costs and attorneys' fees, for any willful violation of the § 362(a) stay. Section 362(c)(2)(C) provides that in a chapter 7 case, the stay concerning an individual continues until the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2)(C).

Here, the Debtor received her discharge on January 11, 2016. (*See* Doc. 15 Order Discharging Debtor). Pursuant to section 362(c)(2)(C), the stay lifted as to Plaintiff on January 11, 2016. Because all of the offending phone calls occurred after the discharge order was entered, this Court finds that the stay was not violated since it had already been lifted. Therefore, the relief requested in Count One for violation of the automatic stay is due to be hereby is DENIED.

<u>Count Two: Violation of Sections 105 and 506 of the Bankruptcy Code</u>

Count Two alleges that the Defendant's conduct constitutes a willful, intentional, gross and flagrant violation of sections 105 and 506[2] of the Bankruptcy Code. Having considered the evidence presented, the Court finds that Plaintiff is entitled to damages pursuant to Count Two as follows.

Section 105(a) provides:
> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105 (West). Section 105 grants statutory contempt powers in the bankruptcy context, stating, "The court may issue any order, process, or judgment that is necessary or

---

[2] The relief requested pursuant to section 506 appears to be a typo as section 506 addresses the determination of secured status. Therefore, the Court will exclude this Code section from its analysis.

appropriate to carry out the provisions of this title." *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996)(*citing* 11 U.S.C. § 105(a)). "Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings." *Hardy,* at 1389 (*citing Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1553 (11th Cir.1996)). "The language of § 105 encompasses 'any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Id.* Therefore, "§ 105(a) grants courts independent statutory powers to award monetary and other forms of relief for [discharge injunction] violations to the extent such awards are 'necessary and appropriate' to carry out the provisions of the Bankruptcy Code." *In re Hardy* at 1389–90. "The plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or *punitive,* as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Matter of Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997)(emphasis in original).

A defendant may be liable for contempt under § 105 if it willfully violated the permanent injunction of § 524. *In re Hardy* at 1389–90 (citing *Jove Eng'g*, 92 F.3d at 1553-54). The Eleventh Circuit has stated that the "focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). "Under the court's statutory contempt powers a court may award sanctions for contempt by finding that the creditor acted willfully according to the following test under which the movant must prove the creditor knew (1) that the discharge injunction was invoked and (2) intended the actions which violated the injunction." *Matter of Arnold*, 206 B.R. at 568(*citing In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996)). "The burden of proof is on the movant to prove the willfulness of the violation by clear and convincing

evidence." *Arnold* at 568 (*citing Jove Eng'g, Inc. v. I.R.S.,* 92 F.3d 1539, 1545 (11th Cir.1996) (providing that "[a] finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated")).

It is undisputed here that Defendant knew of Plaintiff's discharge in bankruptcy. Timber Ridge Apartments was listed at all times on the creditor matrix, and as holding an unexpired lease on Schedule G. (15-3020-JCO, Doc. 1 at 27, 43). Defendant received notice of Debtor's bankruptcy petition, as well as the Discharge Order. (15-3020-JCO, Doc. 16 at 3). Additionally, during the first violative phone call, Plaintiff informed Defendant that the debt was discharged and that she did not owe the debt anymore. Therefore, this Court finds that Plaintiff has sufficiently proven that Defendant knew the discharge injunction was in effect. The first prong of the test is thus satisfied.

Next, Plaintiff must prove that Defendant intended the acts that violated the discharge injunction. The Court finds that the Defendant did. Having received notice of the discharge injunction, and by making no less than 11 subsequent phone calls in violation of the injunction, this Court finds that Defendant intended to violate the injunction with each phone call. Defendants have failed to provide any evidence to the contrary in their defense. Therefore, Plaintiff is entitled the relief requested in Count Two of her Complaint.

<u>Count Three: Violation of the Discharge Order</u>

Count Three alleges that Defendant's conduct was an unlawful violation of the discharge order and caused Plaintiff harm. Having considered the evidence presented, the Court finds that Plaintiff is entitled to damages pursuant to Count Three as follows.

Section 524(a) sets out the effect of the discharge order in a chapter 7:

**(a)** A discharge in a case under this title--

> **(1)** voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
>
> **(2)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . . .

11 U.S.C.A. § 524 (West). "Creditors who continue to attempt to collect debts, that have been discharged in bankruptcy, may be held liable for damages for violating the discharge injunction." *In re Moore*, 593 B.R. 655, 658 (Bankr. M.D. Ala. 2018); *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313, 320-21 (Bankr. D.N.M. 2013)(holding that repeated telephone calls to collect a discharged debt violated the discharge injunction); *McClure v. Bank of America (In re McClure)*, 420 B.R. 655, 660 (Bankr. N.D. Tex. 2009) (holding that Bank of America willfully violated discharge injunction when it turned over two debts for collection knowing that they were discharged); *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 32 (Bankr. N.D. Ohio 2008)(finding that continued collection efforts such as collection calls and notices made to collect a discharged debt violate the discharge injunction); *In re Jones*, 389 B.R. 146, 159 (Bankr. D. Mont. 2008)(taking default judgment on discharged debt violated the discharge injunction).

Though Section 524 does not specifically authorize monetary relief for violation of the discharge injunction, "the modern trend is for a court to award actual damages for violation of § 524 based on the inherent contempt power of the court." *In re Hardy,* 97 F.3d 1384, 1389 (11th Cir. 1996)(citations omitted). The United State Supreme Court characterizes a court's inherent powers as very potent and cautions that they must be exercised with restraint and discretion. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). Despite the Supreme Court's instructed

caution, it also stated that a "primary aspect of [a court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* This Court cannot contemplate another situation wherein use of its inherent powers would be more fitting. Therefore, this Court will rely on its inherent powers, in addition to its § 105 powers discussed above, in determining the consequences of Defendant's violation of the discharge injunction.

"A proceeding to enforce the discharge injunction is one in the nature of contempt." *In re Moore*, 593 B.R. at 658 (*citing In re McClean*, 794 F.3d 1313, 1326 (11th Cir. 2015)). "Section 524 is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." *McClean* at 1321 (citing H.R. Rep. No. 95-595, at 365-55 (1977)). "The violation of an injunction is a contempt against an entire court insofar as it flouts the court's basic authority to preserve order and administer justice. *In re Moore,* 593 B.R. at 658. Accordingly, any court—bankruptcy court included—has inherent powers to punish contempt against it, as a means of protecting itself as an institution." *McClean* at 1319 (citing *Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1553 (11th Cir.1996)).

A defendant cited for contempt under the court's inherent powers must be found to have acted in bad faith pursuant to the same two-part test discussed above under § 105: (1) whether the defendant knew that discharge injunction was invoked; and (2) whether the defendant intended the action which violated the discharge injunction. *Hardy v. United States,* 97 F.3d 1384, 1390 (11th Cir. 1996). The same facts and analysis apply to this Count, except that contempt pursuant to inherent powers requires a finding of bad faith. Without repeating, but applying the same facts as set out above, this Court finds that Defendant acted in bad faith when it continued to pursue Plaintiff regarding a debt it knew was discharged. Defendants have failed

to provide any evidence to the contrary in their defense, despite being given multiple opportunities to do so. Therefore, Plaintiff is entitled the relief requested in Count Three of her Complaint.

Count Four: Violation of Fair Debt Collection Practices Act

Count Four of Plaintiff's Complaint alleges that Defendant violated the Fair Debt Collection Practices Act (hereinafter "FDCPA"), by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt pursuant to 15 U.S.C. § 1692d. For the following reasons, this Court finds that Plaintiff has failed to prove that Defendant's actions violate the FDCPA.

"In order to protect consumers, Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors." *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1257 (11th Cir. 2017) (*citing LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)). "The [FDCPA] imposes civil liability on debt collectors for certain prohibited debt collection practices." *Id.* (*citing Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S. 573, 576, (2010)). "Available remedies under the FDCPA include actual damages, the potential for additional damages up to $1,000 subject to the Court's discretion, and reasonable costs and attorney's fees." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k(a)(1)-(3)). Subject to only narrow exceptions, the FDCPA is a strict liability statute wherein debt collectors who violate the Act are liable even where violations are not knowing or intentional. *Owen v. I.C. System, Inc.,* 629 F.3d 1263, 1270-1 (11th Cir. 2011).

> Section 1692d states in pertinent part:
>> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> **(5)** Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C.A. § 1692d (West).

In determining liability under § 1692d(5), "[c]ourts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" *Mimbs v. J.A. Cambece Law Office, P.C.*, 2013 WL 11982289, at *5 (S.D. Fla. July 31, 2013) (*citing Brandt v. I.C. Sys., Inc.*, 2010 WL 582051 at * 2 (M.D. Fla. Feb. 19, 2010)). Under this section, "[a]ctionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." *Mimbs* at *5 (*citing Majeski v. I.C. Sys., Inc.*, 2010 WL 145861, at *3 (N.D. Ill. Jan. 8, 2010)).

In the present case, the call volume and frequency does not satisfy the case law interpreting this section of the FDCPA. Plaintiff alleges that she received a total of twelve phone calls over the course of eight nonconsecutive days spanning approximately two months. (Doc. 64 at 2). Some phone calls were placed on the same day, but each call occurring on the same day had at least two hours between when the last phone call was made. Only two phone calls were made after business hours, but only slightly so. (S*ee* Doc. 64 at 2: call placed on March 22, 2016 at 5:46 p.m. and call placed on April 21, 2016 at 5:04 p.m.).

Based on these facts and the relevant case law, this Court finds that the FDCPA was not violated. *See Saltzman v. I.C. Sys., Inc.*, 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (granting summary judgment for defendant debt collector who telephoned plaintiff every day, several times a day, during a five week period attempting to collect alleged debt); *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (granting summary judgment to defendant debt collector who placed fifty seven total calls, up to seven calls per day); *Druschel v. CCB Credit Services, Inc.*, 2011 WL 2681637 (M.D. Fla. Jun. 14, 2011) *report and*

*recommendation adopted,* 2011 WL 2681953 (M.D. Fla. Jul. 11, 2011) (summary judgment granted to defendant who allegedly placed 14 calls to plaintiff over a 17 day period).

Sanctions

*Actual Damages*

A willful violation of the discharge injunction is an act of contempt, and is a sanctionable offense that authorizes a court to hold a violating creditor in contempt and award attorney's fees. *Ashley v. Univ. of Ala. Health Serv. Found., P.C.,* 2012 WL 3962669, *2 (Bankr. N.D. Ala. Sept. 6, 2012) (*quoting In re Matthews,* 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995)). Having applied the test set out in *Hardy* above, and finding that Defendant violated the discharge injunction, the Court now considers what sanctions to enter against Defendant for its twelve violations of the discharge injunction.

Imposition of contempt sanctions are designed to "(1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order." *In re Faust,* 270 B.R. 310, 316 (Bankr. M.D. Ga. 1998). Under Eleventh Circuit precedent, contempt sanctions may be imposed in a coercive manner, and actual damages and attorney fees may be awarded. *Hardy,* 97 F.3d at 1390 (quoting *Jove,* 92 F.3d at 1557–58). The court may utilize its inherent contempt powers of § 524, and its statutory contempt powers of § 105 in issuing sanctions. *Hardy,* 97 F.3d at 1388–1390. Claims of emotional distress are actual damages, and Plaintiff's attestations are sufficient for this Court to make a finding of emotional distress. *In re Wassem,* 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009). A debtor is not required to provide corroborating medical evidence of emotional distress. *In re Johnson*, 2012 WL 3905176, at *7 (Bankr. S.D. Ala. Sept. 7, 2012) (*citing Wassem* at 572)). Attorneys' fees are also an appropriate award of actual

damages. Punitive damages may also be awarded for contempt actions involving intentional and egregious conduct. *Johnson* at *7 (*citing Wassem,* 456 B.R. at 573).

Having already found that Defendant acted in bad faith under § 524 and willfully violated an order of this Court as prohibited under § 105(a), this Court relies on both its inherent contempt powers and its statutory contempt powers in awarding the sanctions set out below.

In her affidavit, Plaintiff has not demonstrated any out-of-pocket monetary expenses; she also states that she did not seek medical treatment for the stresses suffered by the violation, thus she does not have any out-of-pocket expenses or medical bills resulting from the violation. However, Plaintiff does attest that she suffered a great deal of stress, anxiety, and embarrassment due to the these twelve phone calls. (Doc. 65 at 2). All but two of the calls were received by Plaintiff while she was at work and she had to answer the calls at work in the presence of coworkers who could overhear the conversation. (*Id.*). As a result of taking these calls at work, Plaintiff was concerned she would lose her job. The phone calls also caused Plaintiff to change her conduct around her coworkers: she became humiliated in front of them and withdrew from them for a period of time. (*Id.*). Plaintiff also attests that some calls were received on the weekend.

Considering all of this, the Court is persuaded that Plaintiff suffered emotional stress as a result of the phone calls. The fact that Plaintiff worried she would lose her job because of the phone calls is problematic to the Court. The fresh start that a bankrupt is entitled to post-discharge is extremely valuable. The discharge injunction is in place to preserve that fresh start and prevent the exact conduct that occurred. This Court considers violation of it to be grave and intolerable. Accordingly, although Plaintiff has not demonstrated any out-of-pocket monetary damages, this Court is satisfied that Plaintiff has carried her burden to show she suffered

emotional distress and the Court holds that Plaintiff is entitled to recover from Defendant $1,500.00 for her emotional distress. Plaintiff is also entitled to recover an additional $260.00 in costs associated with reopening the main case in order to file this Adversary Proceeding. (*See* 15-3020, Docs. 24, 25).

*Attorney's Fees*

In support of Plaintiff's counsel's request for attorney's fees, Mr. Blacksher submitted an affidavit attesting to the lengths he went to communicate with Defendant regarding the discharge violations. Counsel attached to his affidavit an itemized list of the work he performed in prosecuting this adversary proceeding. (*See* Doc. 64 at 3). The itemized list sets out counsel's hourly rate, along with a detailed description of the time spent and the work performed on this case. Having reviewed counsel's time entries, the Court finds them to be warranted, reasonable and necessary and does hereby award $7,900.00 in attorney's fees plus costs.

*Punitive Damages*

"Section 105(a) enables this Court to enter an order awarding punitive damages, so long as the order is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *In re Ashley*, 2012 WL 3962669, at *4 (Bankr. N.D. Ala. Sept. 6, 2012)(*citing Hardy,* 97 F.3d at 1389–90); *Jove,* 92 F.3d at 1553–54)). In determining the rules for awarding punitive damages, the United States Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, (1996) refused to establish a mathematical formula for determining punitive damages and instead stated that the proper analysis is "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." *Id.* However, the Court indicated that an award of four to ten times the amount of compensatory damages may be appropriate depending upon the circumstances in

each case.  This Court cannot reiterate it enough, that the discharge injunction is at the heart of the Bankruptcy Code's protective support for debtors, and such blatant disregard for the law as displayed by Timber Ridge Apartments will not be condoned by this Court.

In the present case, the Court believes that an award of $10,500.00 in punitive damages, which represents seven times the amount of actual damages, reflects a reasonable relationship to the actual harm inflicted upon Plaintiff by Defendant's bad faith and willful misconduct.

## CONCLUSION

Based on the foregoing, this Court hereby enters final judgment in favor of the Plaintiff, Allison Evans, and against Defendant, Timber Ridge Apartments.  Plaintiff SHALL be entitled to recover $1,500.00 in actual damages, $260.00 in costs for reopening the main case, plus attorney's fees in the amount of $7,900.00, and $10,500.00 in punitive damages.  The total sum of $20,160.00 SHALL be paid by Defendant to counsel for Plaintiff, Wesley Blacksher not later than thirty (30) days after the date of this Order, or April 14, 2019, whichever is later.  Upon receipt, Mr. Blacksher is ORDERED to, without delay, distribute to Debtor the monies awarded to her.  There shall be no stay of execution on this judgment and Plaintiff shall be entitled to prompt collection of this judgment.

It is further ORDERED that upon entry of this Judgment, and as soon as practicable, the Clerk shall dismiss this case with prejudice.

Dated:  March 12, 2019

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

Case 16-00032    Doc 67    Filed 03/12/19    Entered 03/12/19 16:49:26    Desc Main
Document      Page 15 of 15